# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

|                          |   |                          |
|--------------------------|---|--------------------------|
| In re:                   | ) |                          |
|                          | ) | Chapter 7                |
| RICHARD M. SHOVE,        | ) | Case No. 17-31052-EDK    |
| KATHLEEN E. SHOVE,       | ) |                          |
|                          | ) |                          |
|         Debtors          | ) |                          |

## MEMORANDUM OF DECISION

Before the Court is a "Motion to Avoid Judicial Liens Under 11 U.S.C. § 522(f)(1)(A)" (the "Motion") filed by Richard M. Shove and Kathleen E. Shove, the debtors in this Chapter 7 bankruptcy case (the "Debtors"). The Debtors move to avoid the judicial lien held by Jose Hernandez ("Hernandez") against the Debtors' interest in real property located at 5 Crystal Street in Lenox, Massachusetts (the "Property"). Hernandez objects to the lien avoidance on grounds that the Debtors do not hold a valid homestead exemption in the Property. Specifically, the Court must determine whether the Debtors' use of a portion of the Property for commercial purposes removes the Property from the protection of homestead exemption claimed under Massachusetts law.

I.   FACTS AND POSITIONS OF THE PARTIES

The relevant facts are not in dispute. The Debtors filed a voluntary petition under Chapter

1

7 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code")[1] on December 15, 2017 (the "Petition Date"). In their bankruptcy schedules, the Debtors disclosed their ownership interest in the Property, listing the value as $195,400, subject to a mortgage with an outstanding balance of $162,125 as of the Petition Date. On their amended Schedule C, the Debtors claimed a $500,000 Massachusetts homestead exemption in the Property.[2]

The Debtors acquired the Property in August 1995, and on March 24, 2015, the Debtors recorded a declaration of homestead in the Berkshire Middle District Registry of Deeds (the "Registry") claiming a homestead exemption (the "Homestead Exemption") pursuant to Chapter 188 of the Massachusetts General Laws (the "Homestead Statute"). The Property, located in a commercial zone, consists of a single structure with two residential dwelling units, a detached two-car garage, and a large carport. At all relevant times, the Debtors and their children have occupied one unit of the Property as their principal residence. Historically, the second unit was rented to third parties; however, since 2015, the Debtors have used the second unit for family visits and short-term rentals through services such as Airbnb (an online short-term rental platform). Mr. Shove owned and operated a landscaping business from the Property until approximately December 2014. The Debtors also own and manage several rental properties; according to the Debtors' schedules, the Debtors owned eight rental properties on the Petition Date.[3]

In addition to the mortgage, the Property is subject to a judicial lien held by Hernandez. In

---

[1] *See* 11 U.S.C. §§ 101 *et seq.* All statutory references are to provisions of the Bankruptcy Code unless otherwise stated.

[2] ECF No. 62 filed March 12, 2018. The Court may take Judicial Notice of its docket. *See LeBLanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

[3] The Debtors have indicated an intent to surrender each of their remaining rental properties and represented to the Court that all of the rental properties are "in foreclosure." May 10, 2018 Hr'g Tr. 4:20, ECF No. 105.

June 2017, Hernandez obtained a money judgment against Mr. Shove, individually and d/b/a Rick's Complete Lawn and Landscaping Service, in the total amount of $965,201.53. On September 20, 2017, Hernandez recorded an Execution issued on account of the judgment in the Registry (the "Judicial Lien").[4] The Debtors have now moved to avoid the Judicial Lien on grounds that it impairs their exemption in the Property pursuant to § 522(f)(1).

Hernandez objects to the Motion on grounds that the Property is not entitled to the protection of the Homestead Statute because the Debtors use the Property primarily for commercial, and not residential, purposes.[5] In support of his position, Hernandez states that the Property is "the center of operations of the Debtor's [sic] property management … and landscaping business" and is used for "commercial rental purposes." Hernandez Obj. 1, Mar. 22, 2018, ECF No. 67. The Debtors, in turn, say the Property is not used commercially to the extent alleged by Hernandez, and claim entitlement to the Homestead Exemption regardless of the minimal commercial activity that may take place at the Property.

II.    DISCUSSION

Under § 522(f)(1) of the Bankruptcy Code, a debtor may avoid a judicial lien "to the extent that such lien impairs an exemption to which the debtor would have been entitled under" state or federal law. 11 U.S.C. § 522(f)(1). Absent a timely objection, a debtor's claimed exemption is prima facie valid. *Id.* at 522(*l*); *In re McNeilly*, 249 B.R. 576, 579 (B.A.P. 1st Cir. 2000) (citing

---

[4] Both of the Debtors have moved to avoid the Judicial Lien, however, the court notes that the judgment and execution are against Mr. Shove only.

[5] Hernandez also argues that the exemption should be denied because the Debtors have, allegedly, acted in bad faith in connection with their litigation and this bankruptcy case. At the hearing, the Court explicitly rejected this argument. Allegations of bad faith are not a basis to deny an exemption. *See Law v. Siegel*, 571 U.S. 415 (2014).

3

*Taylor v. Freeland & Kronz*, 503 U.S. 638, 642 (1992)).  Here, because the objection to the Debtors' Homestead Exemption was raised in opposition to a motion to avoid a lien pursuant to § 522(f), the objection is timely by virtue of Rule 4003(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[6]  "[W]hen the grounds for an objection to lien avoidance rest upon a challenge to the debtor's claimed exemption," the contest is essentially governed by the Bankruptcy Rules as an objection to exemption, i.e., by the provisions of Bankruptcy Rule 4003(c).  *In re Carpenter*, 559 B.R. 551, 555 (Bankr. D.R.I. 2016) (citing *In re Betz*, 273 B.R. 313, 320 (Bankr. D. Mass. 2002)).

A party objecting to a particular exemption has the burden of proving that the exemption is not properly claimed.  Fed. R. Bankr. P. 4003(c); *see also Shamban v. Perry (In re Perry)*, 357 B.R. 175, 178 (B.A.P. 1st Cir. 2006); *In re Vaghini*, 549 B.R. 546, 548 (Bankr. D. Mass. 2016).  "If, however, the objecting party can produce evidence to rebut the exemption, the burden of production then shifts to the debtor to come forward with unequivocal evidence to demonstrate that the exemption is proper."  *Vaghini*, 549 B.R. at 548-49 (quoting *In re Roberts*, 280 B.R. 540, 544-45 (Bankr. D. Mass. 2001)).  Therefore, Hernandez bears the burden to first rebut the prima facie validity of the Homestead Exemption and to ultimately prove by a preponderance of the evidence that the exemption has not been properly claimed.  *Carpenter*, 559 B.R. at 556.

Because the Debtors have claimed a state homestead exemption, the Court must predict how the Massachusetts Supreme Judicial Court (the "SJC") would interpret the Homestead Statute.  *See Garran v. SMS Fin. V, LLC (In re Garran)*, 338 F.3d 1, 6 (1st Cir. 2003) (citing *Caron v.*

---

[6] Bankruptcy Rule 4003(d) provides that the deadlines for objecting to an exemption set forth in subsection (b) of that Rule do not apply to an exemption challenged in opposition to a motion to avoid a lien under § 522(f). At any rate, in light of the recent amendment to the Debtors' Schedule C, the Objection to the Motion was also filed within the deadline to object to the Debtors' homestead exemption even absent a § 522 motion.

4

*Farmington Nat'l Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir. 1996)). The Homestead Statute permits an owner to declare an exemption in a home if the owner occupies or intends to occupy that home as a principal residence. Mass. Gen. Laws, ch. 188, § 3; *see also In re Sullivan*, 550 B.R. 163, 168-69 (Bankr. D. Mass. 2016). The Homestead Statute defines a "home," in relevant part, as:

> (i) a single-family dwelling, including accessory structures appurtenant thereto and the land on which it is located; (ii) *a 2 to 4-family dwelling, including accessory structures appurtenant thereto and the land on which it is located*; (iii) a manufactured home…; (iv) a unit in a condominium…that is used for residential purposes; or (v) a residential cooperative housing unit.

Mass. Gen. Laws, ch. 188, § 1 (emphasis supplied). "Principal residence" is defined as "the home where an owner, and the owner's family if applicable, resides or intends to reside as the primary dwelling." *Id.* The term "dwelling" is not defined in the Homestead Statute. However, the SJC has defined a "dwelling" as "the physical structure of a residential building." *Madaket Realty, Inc. v. Bd. Of Appeals of Nantucket*, 402 Mass. 137, 139 (1988); *see also In re Catton*, No. 14-41468, 2015 WL 1058363, *2 (Bankr. D. Mass. Mar. 5, 2015), *aff'd* 542 B.R. 33 (2015) (citing *Fafard v. Lincoln Pharmacy of Milford, Inc.*, 439 Mass. 512, 515 (2003)).

Hernandez does not dispute that the Debtors are the owners of the Property or, notably, that the Property is a "home" under the definition set forth in the Homestead Statute – the parties agree that the Property is a two-family dwelling. Hr'g Tr. 21:1-9. There is also no dispute that the Property is and has been used as the Debtors' principal residence at all times relevant to this dispute. Hr'g Tr. 22:7-11. However, relying on the analysis set forth in *In re Catton*, Hernandez argues that because the Property is also used for commercial activities, the Court must determine whether Property is ineligible for the protection of the Homestead Statute due to a predominant commercial use.

5

In *Catton*, the court considered whether "a single-family dwelling with a self-contained commercial use crosses the line from residential to commercial" and was no longer eligible for protection under the Homestead Statute. *Catton*, 2015 WL 1058363, at *3. The *Catton* court opined that, in some circumstances, where the commercial use of a property predominates over its residential use, a mixed-use property may be ineligible for homestead protection. *Id.* Accordingly, the *Catton* court analyzed the predominant use of the property by evaluating, *inter alia*, how the property was zoned and the percentage of interior space dedicated to living area versus commercial use, ultimately determining that the property was predominantly used for residential purposes and qualified for protection under the Homestead Statute.[7] *Id.* Hernandez has requested discovery and an evidentiary hearing to establish, under the *Catton* analysis, that the Debtors' use of the Property will not survive a "predominant use" inquiry.

This Court does not read the Homestead Statute as imposing a predominant use requirement. "Where statutory language is clear, the courts must impart to the language its plain and ordinary meaning." *Com. v. One 1987 Mercury Cougar Automobile*, 413 Mass. 534, 537 (1992) (citing *Nationwide Mut. Ins. Co. v. Comm'r of Ins.*, 397 Mass. 416, 420 (1986)). "The [Homestead Statute] is no exception to that rule." *In re Gray*, 378 B.R. 728, 731 (Bankr. D. Mass. 2007). The Homestead Statute requires only that the property meet the definition of "home" and serve as the debtor's "principal residence," as defined in Mass. Gen. Laws, ch. 188, § 1. Those definitions are clear and unambiguous. The Court can find no language in the Homestead Statute that would preclude a debtor from claiming a valid Homestead Exemption in a home that otherwise squarely fits the statutory definition, simply because the home is also used for other purposes. *Cf.*

---

[7] The property was zoned to permit home occupation and commercial use "only if the commercial use is 'clearly incidental and secondary to the use of the premises for residential purposes.'" *Catton*, 2015 WL 1058363, at *3. The living area consisted of 61.5% of the interior space. *Id.*

6

*In re Catton*, 542 B.R. 33, 37 (D. Mass. 2015) ("Nothing in the statute's language precludes a mixed-use building from being a *single-family dwelling….*") (emphasis added).

Further, legislative intent and public policy support the Court's conclusion that the Homestead Statute does not impose a predominant use test or limit on the Homestead Exemption. "It is well-settled that the Massachusetts homestead exemption 'should be liberally construed in favor of debtors.'" *Dwyer v. Cempellin*, 424 Mass. 26, 30 (Mass. 1996); *see also Sullivan*, 550 B.R. at 169. As the SJC explained:

> Homestead laws are based on a public policy which recognizes the value of securing to householders a home for the family regardless of the householder's financial condition. The preservation of the home is of paramount importance because there the family may be sheltered and preserved. Public policy dictates that exemption laws, such as homestead provisions, should be liberally construed to comport with their beneficent spirit of protecting the family home.
>
> The obvious legislative purpose of [the Homestead Statute], is to protect the home from the claims of creditors for the benefit of the homestead declarant and his or her family. We conclude that, in light of the public policy and the purpose of the statute, the State homestead exemption should be construed liberally in favor of the debtor.

*Dwyer*, 424 Mass. at 29-30; *see also Shamban v. Masidlover*, 429 Mass. 50, 53 (1999).

Accordingly, this Court concludes that the Homestead Exemption is intended to apply to residential properties that may also be used for business purposes or in connection with commercial activities so long as the other conditions of the Homestead Statute are satisfied. Because Hernandez has stipulated that the Debtors' Property satisfies the definitions of "home" and "principal residence" set forth in Homestead Statute, the Court concludes that an evidentiary hearing is not warranted and the analysis of the Debtors' Homestead Exemption need not go any further. The Debtors' claimed a valid Homestead Exemption. Therefore, the Judicial Lien clearly

impairs the Debtors' Homestead Exemption, pursuant to § 522(f),[8] and the Court will GRANT the Debtors' Motion. A separate order consistent with this Memorandum will issue forthwith.

DATED: May 29, 2018                           By the Court,

                                              /s/ Elizabeth D. Katz
                                              _____
                                              Elizabeth D. Katz
                                              United States Bankruptcy Judge

---

[8] The Judicial Lien is avoidable in its entirety, as the sum of the Judicial Lien ($965,201.53), all other liens on the Property ($162,195.00), and the amount of the exemption the Debtors could claim in the absence of any liens ($500,000.00) exceeds the value of the Debtors' interest in the Property in the absence of any liens ($195,400.00). *See* 11 U.S.C. § 522(f)(2)(A).